Henry E. Zarlengo, Commissioner The Public Utilities Commission 500 Columbine Building 1845 Sherman Street Denver, Colorado 80203
Dear Mr. Zarlengo:
This is in response to your letter of January 27, 1976, requesting a legal opinion with respect to certain matters that arose in In The Matter of The Application ofPublic Service Company of Colorado for an Order ApprovingApplicant's Proposed Refund Plan, Application No. 28852. As you know, since the initial advice given to the Commission in late December 1975 by the legal staff, the attorneys have done extensive investigation of the facts and research of the law, which provided the basis for the revised opinion orally conveyed to the Commission on February 6, 1976. Because of my conclusion that the notice provisions of C.R.S. 1973, 40-6-108(2), were not met in this case, I felt it was necessary to convey my opinion in writing.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Whether the refund plan approved by the Commission in Decision No. 87916 was contrary to the constitutional and statutory provisions governing The Public Utilities Commission of the State of Colorado?
My conclusion is no.
2. What notice, if any, is required in a proceeding instituted by an application filed by a public utility for approval of a plan to make a refund to its customers?
Notice requirements of subsection 40-6-108(2) are required.
ANALYSIS
Regarding question #1, on December 12, 1975, Public Service Company filed Application No. 28852 in which it sought "Commission approval to refund to its customers the difference between the revenues generated by the revisions in its Gas Cost Adjustment related to Docket No. RP74-77 as discussed in Paragraph 4 and increased cost of gas purchased from CIG and Western Slope determined at the rates approved in the Settlement Agreement in Docket No. RP74-77." Public Service Company also proposed to include in the refund several other amounts that are not relevant to the consideration of the above issue. On December 16, 1975, the Commission entered Decision No. 87916 in which it ordered that: "The refund plan proposed by Applicant as set forth in Paragraphs 7 and 8 of the above Findings of Fact, be, and hereby is, approved. The refund shall be made within sixty (60) days of the effective date of this Order and within such time Applicant shall file a report of refund advising the Commission of its compliance with this Order."
A brief discussion of the history leading up to this refund is as follows: On March 29, 1974, in Docket No. RP74-77, Colorado Interstate Gas Company tendered for filing proposed changes in its FPC Gas Tariff that would have increased revenues from jurisdictional sales by some $10.3 million over the proposed settlement rates in Docket No. RP73-93. On May 1, 1974, the FPC accepted for filing CIG's proposed revised tariff sheets and suspended them for the full statutory period of five months, or until October 1, 1974. On August 15, 1974, CIG tendered for filing substitute revised tariff sheets, which the FPC permitted to become effective on October 1, 1974, subject to refund, pending a hearing and decision on the lawfulness of the rates and charges contained therein. Settlement negotiations resulted in CIG submitting to the FPC a Stipulation and Agreement of Settlement that provided for a jurisdictional cost of service some $6,513,000 less than the annual revenues generated from the increased rates placed into effect by CIG on October 1, 1974. On September 5, 1975, the FPC approved the Settlement Agreement. On November 19, 1975, CIG refunded to Public Service Company $2,143,873 attributable to the settlement in Docket No. RP74-77, and on December 1, 1975, Western Slope Gas Company refunded to Public Service Company $574,757 attributable to the settlement of Docket No. RP74-77. Thus, a total of $2,718,630 was refunded to Public Service Company attributable to settlement in Docket No. 74-77.
After the tariff rates filed by CIG in Docket No. RP74-77 became effective on October 1, 1974, Public Service Company, on October 16, 1974, filed with this Commission Advice Letter No. 197-Gas, accompanied by tariff revisions increasing rates and charges for its gas services. The proposed effective date of the filed gas tariffs was October 22, 1974, but the Commission, by Decision No. 85868, dated October 21, 1974, set the proposed tariffs for hearing, commencing November 4, 1974, and suspended the effective date of the proposed tariffs. After hearing, the Commission, on November 12, 1974, entered Decision No. 85942 in which it ordered that Public Service Company "be, and hereby is, authorized to place in effect upon the effective date hereof those tariff sheets filed by its Advice Letter No. 197-Gas, the suspension of which has been the subject matter of this proceeding."
In Decision No. 85942, the Commission stated in Finding of Fact No. 4:
 4. The subject filing tracks six separate changes in cost of gas from the suppliers. Those six changes are:
 First, a 1974 CIG rate which became effective October 1, 1974. That particular case has increased the Company's cost of gas on an annual basis some $11,089,718. Authority for that October 1st increase was granted by the Federal Power Commission (FPC) in its order in Docket No. RP74-77 dated September 26, 1974. This increased cost of gas is subject to later adjustment and possible refund in accordance with future FPC actions.
Pursuant to the tracking rider approved by the Commission in Decision No. 85942, Public Service Company collected from its customers between the dates of November 12, 1974, and approximately October 1, 1975, the sum of $11,041,348. Once the FPC had approved the Settlement Agreement in RP74-77, Public Service Company recomputed what its gas costs would have been under the settled rates for the period October 1, 1974, to October 1, 1975, which came to $9,180,390. In the refund plan approved by the Commission in Decision No. 87916, Public Service Company refunded to its customers the difference between the above two figures ($1,860,958), plus interest received from CIG and Western Slope Gas Company totaling $123,392, plus interest from December 1, 1975, to January 22, 1976, in the amount of $20,170, less franchise tax paid by Public Service Company attributable to the rider tracking the increase in Docket No. RP74-77 in the amount of $138,917 for a total of $1,865,603. Public Service has since refunded that amount pursuant to said decision.
The tariff revisions filed by Public Service Company under Advice Letter No. 197-Gas to track the increased rates in Docket No. RP74-77, were filed pursuant to C.R.S. 1973, 40-6-111. Section40-6-111 is unlike the provisions of the Natural Gas Act,15 U.S.C.A. Section 717c(e), which specifically speaks to the issue of refund. 15 U.S.C.A. Section 717c(e) provides in part:
 If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. . . .
Inasmuch as Section 40-6-111 does not speak to the issue of refund, one must look to the decision entered by the Commission after the hearing in I S Docket No. 894 to determine whether the rates therein authorized were conditioned on later refund and whether the method for calculating that refund was so specified. In that decision — Decision No. 85942 — the Commission ordered only that "Respondent be, and hereby is, authorized to place into effect upon the effective date hereof those tariff sheets filed by its Advice Letter No. 197-Gas, the suspension has been the subject matter of this proceeding." In Finding of Fact No. 4, the Commission noted that the tariff revisions filed were to track changes in cost of gas from suppliers, and, specifically, with respect to the increase authorized by the FPC in Docket No. RP74-77, that "this increased cost of gas is subject to later adjustment and possible refund in accordance with future FPC action." While the Commission's decision may be construed, when taken as a whole, to condition the rate approval on later refund, that decision clearly does not specify the method to be used in calculating the amount of the later refund. It would appear therefore, that Commission Decision No. 87916 approving a refund plan that would require the refunding of $1,865,603, as opposed to a refund plan that would require the refunding of an amount greater than or less than $1,865,603, was a matter lying within the discretion of the Commission in its consideration of Application No. 28852.
Having thus opined, however, I should point out that had the original decision of the Commission been based on the rates as finally approved by the FPC, Public Service Company would have collected only $8,272,068 in increased rates from its consumers between November 12, 1974, and October 1, 1975, instead of the $11,041,348 that it actually did collect, a difference of some $2,769,280. The refund approved by the Commission does not reflect this fact. What has happened is that the Commission has allowed Public Service Company to keep part of the refund attributable to the period November 12, 1974, to October 1, 1975, thus allowing the Company to apply part of these refund moneys to reimburse itself for the period of October 1, 1974, to November 12, 1974, when Public Service Company was paying higher wholesale rates for gas, but had not received approval from the Commission to collect higher retail rates from its consumers. Approval to collect the higher retail rates from its consumers was allowed by the Commission in Decision No. 85942, on November 12, 1974, and was prospective only — not retroactive to October 1, 1974, which would have been legally impermissible. To keep faith with the consumers of service, it would seem that the Commission, pursuant to what seems its intent in Decision No. 85942, would have been well advised to have required the full refund which Public Service Company received from its wholesale suppliers that was attributable to the period November 12, 1974, to October 1, 1975, to have been passed back to the consumers. Realizing this is a policy matter which transcends the narrow legal issue of whether the Commission was required to do so, I nevertheless am constrained to point out this fact. What is sauce for the goose is sauce for the gander, and if the utility is allowed to pass on its increased costs of gas, it should be required to do the same — in full — for its refunds as well.
The practical reason for this approach is important. By failing to order Public Service Company to pass back the full refund attributable to the period November 12, 1974, to October 1, 1975, any incentive the Company would otherwise have to oppose the CIG rate increase is removed — for, in fact, Public Service has benefited from the final FPC action. Whatever else was intended in Decision No. 85942, it should not have been to allow the Company to collect from its consumers more than its actual increased gas costs for the authorized period.
Regarding question #2, a review of the Commission's official file indicates that no person, firm or corporation who might be interested in or affected by the granting or denying of Application No. 28852 was given notice to the filing of said application. See, also, the facts set forth in question 1.
First, since the application filed by Public Service Company did not propose a change in any existing "rate, fare, toll, rental, charge, or classification or in any rule, regulation or contract relating to or affecting any rate, fare, toll, rental, charge, classification, or service, or in any privilege or facility", the notice provisions of C.R.S. 1973, 40-3-104, and Rule 18 of the Commission's Rules of Practice and Procedure are not applicable and thus are not relied upon or construed in this opinion.
However, since Public Service instituted the proceedings by filing an application, C.R.S. 1973, 40-6-108(2), is clearly applicable and provides in part as follows:
 (2) Notice of all rule-making proceedings, applications, petitions, and orders instituting investigations or inquiries shall be given to all persons, firms, or corporations, who, in the opinion of the commission, are interested in, or who would be affected by, the granting or denial of any such application, petition, or other proceeding.
(Emphasis added.)
Several observations are readily discernible from a reading of the statute on its face. First, subsection 40-6-108(2) requires that notice be given of the filing of an application. Second, that notice shall be given to all persons, firms, or corporations who are interested in or who would be affected by the granting or denying of the application. Third, the Commission is to determine which persons, firms or corporations, who, in the Commission's opinion, are interested in or who would be affected by the granting or denying of the application. Fourth, subsection 40-6-108(2) is silent as to what manner and form notice is to be given.
As mentioned above, the official file of this proceeding indicates that no person, firm or corporation was given notice of the application. Thus, only the applicant utility may reasonably be assumed to have had notice of the filing of the application. Thus, it may be argued that the Commission, in its opinion, could have determined that the applicant utility was the only one interested in the application since its customers only would have benefited from the refund and would not have been injured thereby. Moreover, it is quite possible that the Commission was under the incorrect impression that it had no legal authority to require a refund greater than that proposed by Public Service, thereby rendering Public Service the only person, firm, or corporation interested in the application. See analysis 1,supra. However, it is my opinion that the statute, as a matter of law, requires that some person, firm or corporation, other than the applicant utility, must be given notice, in some reasonable manner and form, of the filing and contents of such an application. The notice requirement in subsection 40-6-108(2) must be interpreted in accordance with the purpose for giving such notice as articulated in the concluding two sentences of that subsection. Said sentences provide:
 Except for good cause shown, any person desiring to file an objection, intervene in or participate as a party in any such proceeding shall file his objection or petition for leave to intervene or, under such rules as the commission may prescribe, file other appropriate pleadings to become a party, within thirty days after the date of such notice, or such lesser time as the commission may prescribe. No final action shall be taken by the commission in any such proceeding during the time any such filing is permitted.
(Emphasis added.)
The purpose of the notice requirement is clearly to give persons, firms and corporations who might be interested in or affected by the granting or denying of the application an opportunity to object to the granting of the application or to intervene in the proceeding. Thus, subsection 40-6-108(2) is intended, not for the benefit of the applicant utility, but for persons, firms or corporations such as customers of the applicant utility or competing certificated utilities. The applicant utility, by reason of filing the application, is by Rule 7 of the Commission's Rules of Practice and Procedure automatically a participant in the proceeding and would have no cause to either object to its own application or to intervene. Moreover, it would be a circumvention of the statute for the Commission not to require that notice be given to someone other than the applicant utility on the grounds that, in the Commission's opinion, no person, firm or corporation other than the applicant utility is adversely affected by or "interested" in the application, since such determination nullifies subsection 40-6-108(2) which is intended to permit such other persons, firms or corporations, and not the Commission, to decide if they should act to protect their interests. Although subsection 40-6-108(2) requires that notice be given to some person(s), firm(s), or corporation(s), other than the applicant utility, the form and manner of the notice as well as the determination of which persons, firms, or corporations are or may be interested in the application is clearly within the discretion of the Commission.
SUMMARY
It is my opinion, therefore, that since no notice was given of the filing of Application No. 28852, the notice requirements of subsection 40-6-108(2) were not met by the Commission. Thus, Decision No. 87916 would be voidable by a court of law.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC UTILITIES
C.R.S. 1973, 40-6-111
C.R.S. 1973, 40-6-108(2)
REGULATORY AGENCIES, DEPT. Public Utilities Comm.
1. PUC approved a Public Service Co. gas refund plan that refunded only part of wholesale gas refund to Public Service Co.'s customers. Opinion states that, while the refund plan was within the commission's discretion, the whole refund should have been returned to the customers.
2. Notice requirements of 40-6-108(2) were not met by PUC when notice of refund application was given only to the utility.